Per Curiam :
This case was referred to Trial Commissioner Mastín G. White pursuant to an order of the court of October 27, 1967, “for the limited and sole purpose of ascertaining and reporting to the court the subsidiary facts and the trial commissioner’s ultimate finding as to whether the contracts upon which plaintiff’s claims are based are maritime in nature and not within the jurisdiction of this court”. The Commissioner has done so in an opinion and report filed on June 7,1968. Neither the plaintiff nor the defendant has filed exceptions or briefs to the Commissioner’s opinion and report and the time for so filing has expired pursuant to the rules of the court. The case comes before the court on its own motion and since the court agrees with the Commissioner’s opinion and ultimate finding as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, defendant’s motion to transfer or dismiss is allowed in that, pursuant to 28 U.S.C. § 1506 (1964), the case is transferred to the United States District Court for the Eastern District of Louisiana. The Clerk of this court will forward to the Clerk of said court a certified copy of the record made here.
OFINION OF COMMISSIONER*
White, Commissioner:
The petition in this case was filed on February 27, 1967. In the petition, the plaintiff asks for a judgment against the defendant in the amount of $294,-965.58 under two contracts between the parties.
One of the contracts mentioned in the preceding paragraph provided for the furnishing by the plaintiff to the defendant of car, barge, and truck loading and unloading services and terminal services at New Orleans, Louisiana, and nearby points. The other contract provided for the furnishing of stevedoring services within the same area. The terms of both contracts terminated several years prior to the institution of the present action.
*606 The petition alleges that the plaintiff entered into the contracts on the basis of estimated tonnage figures furnished by the defendant concerning the amount of work that would be involved under the respective contracts; that the tonnage estimated by the defendant did not materialize during the life of the contracts; and that, because the actual tonnage handled under the contracts was substantially less than the tonnage estimated by the defendant, the plaintiff had un-recovered costs that totaled $294,965.58.
Without filing <an answer, the defendant on July 27, 1967 filed a motion asking that the case be transferred to the United States District Court for the Eastern District of Louisiana, or, alternatively, that the action be dismissed on the ground that the plaintiff has failed to state a claim upon Which relief can be granted.
On October 27,1967, the court directed the commissioner to ascertain the subsidiary facts pertinent to the defendant’s motion, and to include an ultimate finding “as to whether the contracts upon which plaintiff’s claims are based are maritime in nature and not within the jurisdiction of this court.”
The parties were afforded an opportunity to present pertinent evidence at a trial session that was held in New Orleans on March 18,1968.
As indicated in the findings of fact, the contracts involved in the litigation were maritime in nature, and the claims asserted in the petition are not within the jurisdiction of this court. Accordingly, it is my opinion that the defendant’s motion should be allowed, and that, in the interest of justice, the case should be transferred pursuant to 28 U.S.C. § 1506 (1964).
FINDINGS of Fact
1. The plaintiff entered into two contracts with the defendant: contract No. DA 16-143-400-TC-19 (hereinafter referred to as “contract 19”) and contract No. DA 16-143-400-TC-46 (hereinafter referred to as “contract 46”).
2. Contract 19 was dated October 1,1957. It was negotiated by the Procurement Division, U.S. Army Transportation Terminal Command, Gulf, on behalf of the defendant.
*607 3. Contract 19 stated that it was for “Car, barge and truck loading and unloading and Terminal services at New Orleans, La., and nearby points.”
4. The term of contract 19 was originally from October 1, 1957 until September 30,1959, but the term was subsequently extended to March 31, 1960.
5. Contract 19 contained the following provisions (among others) :
ITEM 1 CAE, BAEGE AND TETJCK LOADING AND UNLOADING
a. General. The Contractor [the plaintiff] shall, when called upon by the Contracting Officer, perform efficiently and expeditiously, all work required to unload or load freight cars, truck, or barges, and perform such related services as may be ordered by the Contracting Officer. Such services shall include, but not be limited to, the unloading and loading of cars, barges, or trucks, to and from piers, docks, wharves; the placing or movement of freight or cargo in or about sheds, as directed or required by the Contracting Officer.
b. Contractor's Duties.
(1) Oarloading. Eailroad carloading shall include the preparation of cars for handling cargo, transportation of the cargo from place of rest within three hundred (300) feet of car door, loading within the cars,- and ordinary bracing and securing of the cargo within the cars in accordance with Association of American Eail-road Carloading Eegulations and Joint Army Air Force Eegulations, and sufficient to prevent shifting while in transit. If bracing and blocking shall be beyond normal and carpenters are required or ordered by the Contracting Officer, such additional carpenter work shall be performed by the Contractor at extra labor rates set forth in applicable schedule of CLAUSE 2.
(2) Unloading. Eailroad car unloading shall include the breaking of seals, opening and closing of car doors, removal 'of cargo from the cars to pallet boards and tiering at place of rest, as designated by the Contracting Officer within 300 feet of car door and. within reach of Contractor’s equipment. Upon completion of the unloading, Contractor shall clean the cars of paper, dun-nage, steel and/or wire strapping and chocks, including nails used to secure chocks, from beds of cars. Eemoval *608 of any special bracing shall be done at extra labor rates set forth in applicable schedule of CLAUSE 2.
(3) Truck Loading and/or Unloading. Loading shall include transportation of cargo from place of rest within truck. Unloading shall include removal of cargo within three hundred (300) feet of truck and loading from truck to pallet boards and tiering at place of rest as designated by Contracting Officer within three hundred (300) feet of truck and within reach of Contractor’s equipment. Contractor will be compensated at commodity rates set forth in schedule 1A of CLAUSE 2.
(4) Discharging of Barges. When barges are discharged and cargo is not 'loaded directly into vessels, Contractor will be compensated at commodity rates set forth in CLAUSE 2, Schedule I, unless otherwise directed by the Contracting Officer.
(5) Loading and/or Discharging Oars with Floating Derrick. The Contractor shall, when directed by the Contracting Officer, load and/or discharge those cars, requiring the use of a floating derrick on the river side of the marginal track and shall be compensated therefor at the commodity rates set forth in schedule IB of CLAUSE 2. The floating derrick shall be furnished at no expense to the Contractor.
(6) Transfer of Oargo. The Contractor shall, when directed by the Contracting Officer, transfer cargo within the terminal area (such area to be defined as Units I, II, and III including storage lots adjacent thereto and the entire wharf area) and shall be compensated therefor at the commodity rates set forth in schedule IC of CLAUSE 2. Should cargo be transferred outside the area as specified herein the contractor shall be paid at the extra labor rates as specified in the applicable schedule of CLAUSE 2.
(I) Tiering of Oargo Unloaded ~by Shipper. In those cases wherein it is the responsibility of the shipper to absorb the unloading costs, the Contractor shall, when directed by the Contracting Officer, take delivery of the cargo at the initial place of rest, transfer it to a final place of rest within 300 feet and tier such cargo, if required, up to and including four (4) tiers and shall be compensated therefor at the rates set forth in Schedule ID of CLAUSE 2. -
(8) Loading Oargo Into Oonex Oargo Transporters. The Contractor shall when requested by the Contracting Officer furnish necessary labor and equipment for loading cargo into empty conex cargo transporters. The Contractor shall take empty conex cargo transporters *609 from place of rest on wharf and transfer same to packing point, load, band and stencil conex cargo transporters, and return to the place of rest. The Contractor shall be compensated therefor at the rates set forth in Schedule IE of CLAUSE 2.
❖ ❖ * * *
s. Safety. The Contractor shall, in performing services on the vessels, wharves and other areas allocated to him, observe all New Orleans Army Terminal safety and other applicable regulations, all other commercial marine safety practices; and take all necessary and proper fire precautions. He shall cooperate with Government safety and fire engineers to the end that a “Safe practices” program may be developed. In addition, the Contractor agrees to furnish to the proper port agencies, a report of each and every accident occurring to Contractor’s employees in the manner prescribed by port procedures. All accident reports will be received by the Safety Division, New Orleans Army Terminal, not later than eight (8) working days after the accident is experienced. Failure to furnish such reports may constitute “default” as indicated in CLAUSE 4, Damages— Defaults.
. t. U.S. Coast Guard Security Cards. All personnel hired directly or indirectly by the Contractor for work on Army cargo or at a water front installation at which Army cargo is handled must have a U.S. Coast Guard Security Card, therefore, all contractual personnel reporting for work on Army cargo' at any water front installation will be required to produce their U.S. Coast Guard Security Card or be denied access to or permission to work on any Army cargo at any water front installation within the geographical authority of this command.
$ * *
ITEM 2
TERMINAL SERVICES
a. Generad. The Contractor agrees to furnish all checking and clerking services as may be designated herein, in connection with cargo being loaded info conex cargo transporters, loading and discharging of vessels, railroad cars, barges and trucks at any wharf, warehouse or other place which the Contracting Officer may designate. All work to be performed in the order directed by and in a manner satisfactory to the Contracting Officer.
*610 b. Contractor’s Duties — Cheeking and Clerking.
(1) For all vessels to be loaded or discharged, the Contractor shall, check, tally, sort and document as required all cargo from or to place of rest on wharf, to or from vessels in the order directed by and in a manner satisfactory to the Contracting Officer. The Contractor shall also check and tally each bundle of dunnage loaded in or. discharged from vessel, checking and tallying of dunnage as indicated herein includes the tallying of the number of bundles The Contractor shall be compensated therefor at the commodity rates set forth in' Schedule IF herein. Dunnage used in dunnaging cargo will not be included in the tonnage payable to the Contractor.
(2) For dock and wharf operations, the Contractor shall check and tally all cargo from or to: railroad cars, lighters, conveyances, barges, car floats, derricks, scows, trucks, trailers or other cargo carriers to or from place of rest on wharves. The Contractor shall be compensated therefor at the commodity rates set forth in Schedule IG herein.
(3) The Contractor, at his own expense, shall furnish all necessary and required checking and clerking services to properly tally, receive and deliver all cargo ordered transferred from or to and or within wharves, docks, warehouses and other storage areas.
(4) The Contractor will supply checkers and clerks for those vessels, railroad cars or other cargo conveyances designated by the Contracting Officer to be handled by the Stevedore Car, Barge and Truck Contractors, on a manhour or extra labor 'basis. The Contractor shall be compensated therefor at the commodity rates set forth in Schedule I herein and on no other basis.
6. Contract 46 was dated March 13,195.8. It was negotiated by the Procurement Division, U.S. Army Transportation Terminal Command, Gulf, on behalf of the defendant.
7. Contract 46 stated that it was for “Stevedoring Services at New Orleans, Louisiana and Nearby Points.”
8» The original term of contract 46 was from March 13, 1958 until September 30,1959, but the term was subsequently extended until March 31, 1960.
9. Contract 46 contained the following provisions (among others):
CLAUSE 1. General Scope of the Contract.
a. General. The Contractor [the plaintiff] shall load and discharge cargoes and in connection therewith shall *611 perform all the duties of a stevedore on any vessel wMch the Contracting Officer may designate at New Orleans Army Terminal and Nearby Points upon the terms and conditions hereinafter set forth for the term of this contract, beginning 13 March 1958 and ending 30 September 1959, provided, however, that any work started before and not completed by the expiration of this contract shall be governed by terms of this contract unless otherwise directed by the Contracting Officer.

b. Contractor's Duties

(1) Loading. In loading vessel, the Contractor shall remove and handle cargo from place of rest on pier or in pier shed or within the cargo assembly area * * *; also from open-top railroad cars, trucks and trailers alongside ship; also from barges, lighters, scows, car floats and open-top railroad cars on car floats alongside ship. The Contractor shall stow said cargo in any space in the vessel, including bunker space, holds, ’tween decks, on deck, and deep tanks, in the order directed 'by and in a manner satisfactory to the Contracting Officer and the master of the vessel or his representative.
(2) Discharging. In discharging vessel, the Contractor shall remove and handle cargo from any space in the vessel, including bunker space, holds, ’tween decks, on deck and deep tanks. The Contractor shall land said cargo at place of rest on pier or in pier shed all within the cargo 'assembly area * * *; also on open-top railroad cars, trucks and trailers alongside ship; also on barges, lighters, scows, car floats and open-top railroad cars on car floats alongside ship. The Contractor shall perform such discharging in the order directed by and in a manner satisfactory to the Contracting Officer.
*****
(4) Cargo Assembly/ Area. The term “cargo assembly area” as used in this contract, is defined as 150 feet from either extremity of the vessel and for a distance of 250 feet from the vessel’s inboard side.
*****
d. Digging and v/nrigging. When the ship’s gear is used for handling cargo, the Contractor, at-his own expense, shall rig and unrig all gear, including the rigging and unrigging of heavy-lift gear when the heavy-lift booms are used, and shall hoist, lower and secure hatch tents when necessary; provided, however, that where any one set of (gear is rigged for handling less than 100 payable tons of cargo on a commodity rate basis, the Contractor shall be compensated on an extra *612 labor basis for the rigging and unrigging of such set of gear. Nigging and unrigging shall include topping, lowering, and trimming of booms. When the Contractor is required to perform any rigging or unrigging services for the purpose of performing extra labor services, or performs any such services at the request of the Contracting Officer for any purpose other than loading or discharging cargo on a commodity rate basis, he shall be compensated, therefor at extra labor rates. When the Contractor is required to break out booms from collars or boom rest, or to reeve guys on topping 'lifts through blocks, he ¿hall be compensated therefor on an extra labor basis.
e. Opening and Closing Vessel. The Contractor shall, at his own expense remove and replace tarpaulins, battens, hatch covers and beams with respect to all decks and deep tanks both during loading and unloading operations and when necessary because of weather or working conditions, as directed by the Contracting Officer; provided, however, that the opening and closing on any one 'hatch shall be performed on an extra-labor basis where 'less than one hundred (100) payable tons are to be loaded and/or discharged at the commodity rate on any hatch so worked, and also where the Contractor is required to open and close the vessel for the purpose of performing extra-labor services. The removing, handling,_ replacing or setting of reefer plugs during the handling of cargo in any or all refrigerated or chilled space aboard the vessel is included in the basis commodity rate, except where the complete operation is on an extra-labor basis. When the Contractor is required to open or close reefer plugs more than once in any four-hour shift because of a change in orders or type of cargo, he shall be compensated therefor on the basis of 15 minutes detention time for men in gangs, including equipment drivers and, gañg foremen.
*****
/. Dockmg, Undocking and Shifting of Vessels. The Contractor shall, when requested by the Contracting Officer, furnish men to handle lines for docking, un-docking and (Shifting of. vessels, and the Government shall compensate the Contractor therefor at the rates set forth in the applicable schedule of CLAUSE 2.
g. Shifting Barges, Lighters, Scows, and Oar Floats. Bargers [sic], lighters, scows, and car floats will be placed alongside the vessel without cost to the Contractor. When they are shifted from hatch to hatch, *613 tbe Contractor shall do so at his own expense unless operational conditions make movement by ship’s gear impracticable, in which event the operation shall be at the expense of the Government.
h. Gear Supplied by Government. The Government, at its own expense, shall furnish and maintain in good working order the following: blocks on booms, booms, heavy lift cranes, wire and rope falls rigged, gantlines rigged on booms, hatch tents, lighters and floating derricks, lights on wharves and vessels, pallet boards, power and steam necessary, preventers on booms, and winches. Floating derricks and heavy lift dock cranes will not be used when, in the opinion of the Contracting Officer, the ship’s equipment can be used satisfactorily. When working with Government equipment, manned by Government personnel, the Contractor shall in no way be deemed to be agents or employees of the Government and shall at all times bear the responsibility of independent contractors.
i. Gea/r Supplied by Oontraetor. The Contractor shall perform an efficient stevedoring operation, and, except as provided in paragraph j of CLAUSE 1, shall at his own expense, furnish all necessary and proper gear, including the following: roller conveyors, hooks, cargo nets, save-all nets, rollers, skids, chain slings, platform slings, wire and rope slings (except heavy-lift slings used in connection with shore or floating heavy-lift cranes), drag lines, spreaders, hand trucks, machinery dollies, rubber wheel trailers, lift trucks, tractors, and tractor cranes (up to 5 ton lifting capacity); provided, however, that the Contractor shall be compensated for furnishing mobile equipment in accordance with the applicable schedule in CLAUSE 2, whenever such equipment is furnished in connection with services performed on an extra labor basis.
*****
x. Safety. The Contractor shall, in performing services on the vessels, wharves and other areas allocated to him, observe all New Orleans Army Terminal safety and other applicable regulations, all other commercial marine safety practices; and take all necessary and proper fire precautions. He shall cooperate with Government safety and fire engineers to the end that a “safe practices” program may be developed. In addition, the Contractor agrees to furnish to the proper port agencies, a report of each and every accident occurring to Contractor’s employees in the manner prescribed by *614 Terminal procedures. All accident reports will be received by the Safety Division, U.S. Army Transportation Terminal Command, Gulf, not later than eight (8) working days after the accident is experienced. Failure to furnish such reports may constitute “default” as indicated in CLAUSE 4, Damages — Default.
10. The services performed by the plaintiff under contract 19 and contract 46 were performed on ships or on wharves, or in connection with the loading of cargo aboard ships or the unloading of cargo from ships.
11. The plaintiff’s employees who performed the work under contract 19 and contract 46 were members of the International Longshoremen’s Association.
ULTIMATE FINDING
12. Contract 19 and contract 46 were maritime in nature, and the claims asserted in the present action under those contracts are not within the jurisdiction of this court.

 The memorandum opinion and findings of fact are submitted under the order of reference and the court’s order of October 27, 1967.